| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x<br>In re:<br><br>TAVERN ON THE GREEN LIMITED<br>PARTNERSHIP, et al.,<br><br>                 Debtors.<br>------------------------------------------------------------x<br>TAVERN ON THE GREEN LIMITED<br>PARTNERSHIP and LEROY ADVENTURES,<br>INC.,<br>                 Plaintiffs,<br>v.<br><br>NEW YORK CITY DEPARTMENT OF<br>PARKS AND RECREATION,<br><br>                 Defendant.<br>------------------------------------------------------------x | **Hearing Date: 10/15/09**<br>**Hearing Time: 11:00 a.m.**<br><br>Chapter 11<br><br>Case No. 09-15450 (ALG)<br>Case No. 09-15448 (ALG)<br><br>(Jointly Administered)<br><br><br><br><br>Adv. Proc. No. 09-01513 |

### DEFENDANT'S OPPOSITION TO DEBTORS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The New York City Department of Parks and Recreation ("Parks"), the defendant in the above-referenced adversary proceeding, by its counsel, MICHAEL A. CARDOZO, Corporation Counsel of the City of the New York, attorney for the City of New York, hereby submits its Opposition to Debtors' Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction in connection with Debtors' Complaint for Injunctive Relief (the "Complaint") dated October 12, 2009 and served on the undersigned counsel on October 13, 2009 in the morning. A hearing on the TRO is scheduled before the Court on October 15, 2009 at 11:00 a.m. In support thereof, Parks states as follows:

## PRELIMINARY STATEMENT

1. Without citing any authority to support their position that a licensee is entitled to a holdover past the expiration date of the License Agreement, and without making any showing of irreparable harm, <u>because Plaintiffs are permitted to continue operating the Tavern on the Green (the "Restaurant") uninterrupted through the end of the year</u>, Plaintiffs request the entry of an order "(i) determining that the automatic stay is applicable to the instant matter pursuant to 11 U.S.C. § 362 (a)(1) and (a)(3); (ii) extending the provisions of § 362 (a)(1) and (a)(3) through its 11 U.S.C. § 105 powers to allow Tavern a period of at least 90 days after December 31, 2009 to vacate the premises; and (iii) staying the effectiveness of the license termination pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rule 7065." See TRO at p. 4, ¶ 9.

2. In support of such extraordinary relief, the Debtors submit the Affidavit of Debtors' bankruptcy counsel, Keith N. Costa (the "Costa Aff.") and the Affidavit of Michael Desiderio (the "Desiderio Aff."), the Chief Operating Officer of Debtor, Tavern on the Green Limited Partnership ("Tavern'), both of which make only conclusory statements concerning the Debtors' need for a 90 day holdover period after the December 31, 2009 expiration date of the License Agreement (the "Expiration Date"). Even though the Debtors recite that they have consulted with a potential auction house and, according to their Petition and Schedules, Sotheby's has already appraised the Debtors' fine art, furniture, chandeliers and equipment (collectively, the "Personal Property") at $8.1 million, no affidavit was submitted from Sotheby's in support of the TRO.

3. Thus, there are no facts before the Court to establish that: (i) a 90 day period is required after the Expiration Date to conduct the auction, sell the Personal Property and vacate the premises; (ii) the Restaurant must be shut off during the 90 day period; or (iii) that

shutting off the Restaurant for more than a minimum amount of time – such as two weeks to a month -- would benefit the Debtors' estates, its creditors, the Debtors' current employees, the unions and other parties in interest, including the new operator of the Restaurant, his future employees, the visiting public and the City as a whole.

4. There is nothing in the Debtors' premature request for injunctive relief showing, for example, that: (a) the Personal Property cannot be photographed and a catalog cannot be prepared within 30-45 days from now; (b) notices and advertisements cannot be published within 30-45 days from now assuring the public that the Restaurant will be open for business through the end of the year; inviting the public to visit, dine or book an event – one more time – before the Restaurant closes; informing the public that the Personal Property could be viewed and that all such Personal Property is for sale; establishing a dedicated phone line to take potential offers for the Personal Property, all subject to higher and better offers at the auction; and advising the public <u>at this time</u> that the auction will take place on a specific date in January, 2010, and that all sales have to be completed within a few days of the auction date. The Debtors' proposed sale motion can be prepared and filed <u>at this time</u>, not after the Expiration Date of the license.

5. While Parks strongly disagrees that the Debtors need the required 90 days after the Expiration Date to conduct the auction and vacate the premises, it does not contest most of the Debtors' factual statements, including the following:

- ■ "historically, November and December are the Debtors' most profitable months;"

- "in order to secure bookings for holiday parties and other events during the holiday season, the public must have assurance that Tavern on the Green will continue operations through the end of the year."

- "in order for the Debtors to comply with the requirements under the NYS Warn Act, it is necessary that the employees be assured of a job through the end of the year, and that the Debtors be assured of an ability to pay its employees through the end of the year."

- "an auction held 'in place' immediately following the holiday season" is likely to maximize the value of the fine arts and chandeliers;

- "a 'preview' period of approximately a week to ten (10) days is necessary to enable potential bidders to inspect these valuable assets";

- "...these assets could not be removed from the Central Park Location while the restaurant is operating."[1]

- "a reasonable period is necessary for the careful removal, packing and shipping of the pieces [unique chandeliers and other fine art work] to successful bidders."

See TRO at pp. 6-7.

6. Thus, a TRO is not only unwarranted but also unnecessary. Provided that the Debtors make every reasonable effort to properly and efficiently plan for an auction, or other appropriate disposition, including to the new operator, while maintaining the Restaurant in business, there is no reason why the auction or disposition cannot be successfully completed in early to mid-January, 2010, thus providing the Debtors with a two week period within which to

---

[1] Parks understands this language to refer to the period prior to the Expiration Date of the License Agreement, not the period after the license has expired.

carefully pack, deliver the Personal Property and vacate the premises by no later than January 31, 2009. Such a timetable permits the Debtors to maximize their assets from the uninterrupted Restaurant operations through the Expiration Date, while being sensitive to the needs of all creditors, including the City, the Debtors' current employees, the new licensee, his future employees, the visiting public and the entire City of New York, all of which are likely to benefit from the continuous, almost uninterrupted use of the Restaurant.

7. As will be shown below, the Debtors have failed to carry their heavy burden of showing any of the three prongs of injunctive relief: (i) irreparable harm; (ii) a likelihood of success on the merits; and (iii) the balance of equities in their favor. No facts were presented from which a conclusion can be drawn that unless the TRO and injunctive relief are granted, "the Debtors' estates and the prospects for their reorganization will be threatened, burdened, delayed or otherwise adversely affected ..." See TRO at p. 7, ¶ 18. Accordingly, since there is nothing prohibiting the Debtors from continuing the Restaurant operations through the Expiration Date, and since the Debtors have more than two months to adequately plan for an orderly and efficient auction of the Personal Property to take place at the premises in early to mid-January, 2010, and Parks is willing – provided such steps have been taken – to permit the Debtors an additional two weeks to pack, deliver and vacate the premises, the TRO and injunctive relief are premature, unnecessary and should be denied.

## ARGUMENT

### THE STANDARD FOR INJUNCTIVE RELIEF

**The Preliminary Injunction Standard of Fed. R. Bankr. P. 7065 Is Equally Applicable Under 11 U.S.C. § 105(a)**

8. The usual preliminary injunction standard applies under Section 105(a) of the Bankruptcy Code. See e.g., In re Feit & Drexler, 760 F.2d 406, 415 (2d Cir. 1985) (holding,

in a § 105(a) case that "well-established" Second Circuit standards for preliminary injunction relief govern under Section 105(a)); Ochs v. Lipson (In re First Central Fin. Corp.), 238 B.R. 9, 20-21 (Bankr. E.D.N.Y. 1999), aff'd, appeal dismissed, 2000 U.S. Dist. Lexis 22005 (E.D.N.Y. 2000), citing Procter & Gamble Co. v. Chesebrough-Pond's Inc., 747 F.2d 114, 118 (2d Cir. 1984); Lionel Corp. v. Committee of Equity Sec. Holders (In re Lionel Corp.), 30 B.R. 327, 329-30 (Bankr. S.D.N.Y. 1983) (denying preliminary injunction against state court litigation pursuant to § 105(a) because the debtor failed to demonstrate irreparable harm).[2]

9. A preliminary injunction is considered an "extraordinary" remedy that should not be granted as a routine matter. See Twentieth Century Fox Film Corp. v. Marvel Enterp., Inc., 277 F.3d 253, 258 (2d Cir. 2002); United States v. New York City Board of Education, 2002 U.S. Dist. Lexis 23956 (E.D.N.Y. 2002), at pp. 11-12 of the Lexis opinion; Wandyful Stadium, Inc. v. Town of Hempstead, 959 F. Supp. 585, 591 (E.D.N.Y. 1997); First Central Fin., supra. Having totally failed to carry their burden of proof, as will be shown in more detail below, the Plaintiffs' TRO must be denied.

### PLAINTIFFS HAVE FAILED TO SATISFY ANY OF THE FACTORS REQUIRED TO BE ESTABLISHED FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION

#### A. Plaintiffs' Harm Is Hypothetical, Not Imminent and Irreparable

10. A party seeking a preliminary injunction must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the

---

[2] See also legislative history to the Bankruptcy Reform Act of 1978, H.R. Rep. No. 595, 95th Cong., 1st Sess., at 342; S. Rep. No. 989, 95th Cong., 1st Sess., at 51. ("Stays or injunctions issued under [inter alia section 105] will not be automatic ... but will be granted or issued under the usual rules for the issuance of injunctions.").

merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movants' favor. See Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 149, n. 3 (2d Cir. 1999); United States v. New York City Board of Education, 2002 U.S. Dist. Lexis 23956, at pp. 11-12 of the Lexis opinion (E.D.N.Y. July 24, 2002). A showing of irreparable harm is considered the "single most important requirement" in satisfying the preliminary injunction standard. United States v. New York City Board of Education, supra, at pp. 14 of Lexis opinion; Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990); Mamiya Co. v. Masel Co., 719 F.2d 42, 44 (2d Cir. 1983). In most cases, "the moving party must first demonstrate that [irreparable] injury is likely before the other requirements for the issuance of an injunction will be considered. Rodriguez v. DeBuono, 175 F.3d 227, 234-35 (2d Cir. 1999).

11. Irreparable harm is "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998) (*per curiam*); National Ass'n for Advancement of Colored People, Inc. (NAACP) v. Town of East Haven, 70 F.3d 219, 224 (2d Cir. 1995); see also Weinberger v. Romero-Barcelo, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L.Ed.2d 91 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies.") In Forest City, supra, the Second Circuit upheld the denial of a preliminary injunction where the harm alleged by a developer and a group of unidentified future residents of a proposed "assisted living facility" was remote and speculative (i.e., not irreparable) and, in any event, compensable in money. See also United States v. New York City Board of Education, 2002 U.S. Dist. Lexis 22764 (E.D.N.Y. Nov. 26, 2002) at pp. 24-25 of Lexis opinion, in which the court denied

injunctive relief where even if plaintiffs were to succeed on their claims of entitlement to future increases in pay, the "loss of the difference in pay can be remedied" by money damages.

12. The Debtors' purported injury is totally speculative, not actual or imminent. By their Motion, the Debtors seek an order (i) determining that the automatic stay is applicable to the instant matter pursuant to 11 U.S.C. § 362 (a)(1) and (a)(3); (ii) extending the provisions of § 362 (a)(1) and (a)(3) through its 11 U.S.C. § 105 powers to allow Tavern a period of at least 90 days after December 31, 2009 to vacate the premises; and (iii) staying the effectiveness of the license termination pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rule 7065." See TRO at p. 4, ¶ 9. As will be shown below, the Debtors' request for relief is drastic and not supported by the applicable law.

13. The Debtors repeatedly state that "[i]t is imperative that the Debtors be permitted to continue to operate at the Central Park Location through and including December 31, 2009, and thereafter conduct an auction of the assets consisting of fine art, chandeliers, furnishings and equipment at the Central Park Location." See TRO at p. 5, ¶ 13. They insist that "[i]f the Debtors are not afforded an opportunity to operate through December 31, 2009 and a period of time thereafter to vacate the Central Park Location, the Debtors and their Estates will suffer a substantial loss of income and devaluation of assets, all to the detriment of the creditors of the Estates." Id. They also claim that if their 90 day request is not granted, "the Debtors' estates and the prospects for their reorganization will be threatened, burdened, delayed or otherwise adversely affected ..." See TRO at p. 7, ¶ 18.

14. No facts have been presented to this Court compelling such a conclusion. First, Parks does not contest the Debtors' right to continue to operate the Tavern on the Green

restaurant through and including the December 31, 2009 Expiration Date, in accordance with the License Agreement. Parks is not seeking to affect Tavern's operation of the Restaurant through its licensed term in any way. Parks' utmost concern is with the continuous operation of the Restaurant and the smooth transition to the new operator, for the benefit of all, including the current and future employees, the visiting public, and the City of New York as a whole. The Debtors have failed to explain why they cannot maximize their assets from continuing operations of the Restaurant through the Expiration Date, while simultaneously showing sensitivity to the claims, needs and potential damages of other creditors and non-parties resulting from a shutting off of the Restaurant for a lengthy, 90 day period. Similarly, the Debtors have not shown why it is not possible for the proposed auction to take place in early to mid-January 2010, while the new licensee could simultaneously use a portion of the premises.[3]

15. Debtors do not dispute that Tavern is only a licensee and that its license term expires on December 31, 2009. As a licensee, Tavern does not have a legal right to a holdover. In re M.J. & K Co., Inc., 161 B.R. 586 (Bankr. S.D.N.Y. 1993), which involved a debtor licensee's operation of a bookstore at licensor, Brooklyn Law School ("BLS"), is instructive concerning a licensee's circumscribed rights under New York law. The Chapter 11 debtor, M.J. & K Co., had operated a law school bookstore at BLS pursuant to an exclusive license agreement with BLS entered into in December, 1982. Because the debtor's operations became unreliable post-Petition, BLS moved in 1993, pursuant to 11 U.S.C. § 362(d)(1), for

---

[3] The fact that the proposed new license for the Restaurant between Parks and Dean Poll ("Poll"), the operator of the Boathouse restaurant in Central Park, has not yet been executed, is a red herring, and not relevant to the issue before the Court. The Debtors cannot use this fact, which pertains to conduct between two non-debtors, to fashion a legal argument unsupported by existing law that the Court has the power to extend the Expiration Date absent a showing of irreparable harm.

relief from the automatic stay to permit it to serve a proposed notice on the Debtor to quit pursuant to Article 7 of the New York Real Property Actions and Proceedings Law ("RPAPL"). The debtor claimed that its license did not expire in 1983 because it was permitted to continue to operate the bookstore for 10 additional years. Following an evidentiary hearing, the bankruptcy court (Garrity, J.) granted BLS' lift stay motion finding no merit in debtor's contention that the license had not expired and that the rights created by the license agreement gave rise to "something other" than a license in real property terminable at will.

16. While holding that any right created in debtor's estate by the license agreement was protected by the automatic stay under 11 U.S.C. §§ 362 and 541(a), the Court noted that the nature and extent of those rights, if any, are fixed by state law, id., 161 B.R. at 593, citing Butner v. United States, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed.2d 136 (1979), and such rights do not expand just because a debtor files for Chapter 11 relief, see, e.g., Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir.), cert. denied, 469 U.S. 982, 105 S. Ct. 386, 83 L.Ed.2d 321 (1984).

17. "The common law rule is 'that a license in real property is revocable at the will of the licensor unless it is coupled with an interest or made irrevocable by the terms of the contract.'" M.J. & K Co., 161 B.R. at 593, citing In re Yachthaven Restaurant, Inc., 103 B.R. 68, 78 (Bankr. E.D.N.Y. 1989). "A license created by contract for a definite period expires at the end of that period." See, e.g. Nemmer Furniture Co. v. Select Furniture Co., 25 Misc.2d 895, 208 N.Y.S.2d 51, 56 (Sup. Ct. Erie Co. 1960) (a license for a definite term embodied in a contract cannot be revoked without giving rise to an action for breach of that contract); Berman v. Windale Properties, Inc., 10 Misc.2d 388, 169 N.Y.S.2d 975, 977 (Sup. Ct. West co. 1957) (same)." M.J. & K Co. also relied on Lordi v. County of Nassau, 20 A.D.2d 658, 246 N.Y.S.2d

502 (2d Dept 1964), aff'd, 14 N.Y.S.2d 699, 250 N.Y.S.2d 54 (1964), in which the Appellate Division reversed the grant of the injunction holding that a license is terminable at will and will not give rise to a holdover despite the fact that the license agreement had lapsed and the licensee continued to operate the golf pro shop for more than two years before being notified that its contract was terminated.

18. Debtors here do not dispute that the License Agreement expires by its terms on December 31, 2009. Nor is this a case where Parks permitted Debtors to stay past the Expiration Date and now seeks to terminate the license. This case involves the opposite situation with Parks seeking to enforce its rights to terminate the License Agreement on the Expiration Date and the Debtors attempting to make an argument that they should be entitled to a 90 day holdover. The law, however, is clear. Absent the Debtors' Chapter 11 filing, Parks' license with Tavern was terminable at will or upon its Expiration Date. The Debtors' Chapter 11 filing does not extend the term of the Debtors' license beyond its Expiration Date. Contrary to the Debtors' view (see Debtors' TRO at p. 8, ¶ 21), the Debtors' interest in the License Agreement ceases to be "property of the estate" upon the natural Expiration Date of the license. Courts have warned against the improper use of the bankruptcy courts' injunctive powers "to force a licensing agency to prefer one applicant over the other". See In re D.H. Overmyer Telecasting Co., 35 B.R. 400, 404 (Bankr. N.D. Ohio 1983) ("Any attempt by a licensee or permit holder to use bankruptcy proceedings to limit the discretion of the regulatory body would be an attempt to enhance the debtor's property rights, contrary to the purpose of the Code.") (citation omitted).

19. Moreover, as indicated above, Parks has advised the Debtors that it was willing to permit the Debtors to conduct their auction of the Personal Property at the premises in early to mid-January, 2010, provided that, the Debtors take the necessary steps during the next

30-45 days to adequately, expeditiously and efficiently plan and prepare for an auction by no later than mid-January, 2010, including filing the necessary motion papers in the Bankruptcy Court for approval of such auction, advertising the auction and using all methods possible to seek early minimum bids for the Personal Property, subject only to higher and better offers at the auction. For the reasons already elaborated above, the Debtors' request for a 90 day "holdover" period is unwarranted, unnecessary, unreasonable and not in the best interests of all parties in interest.

20. The City is not just the licensor under the License Agreement but also one of the largest creditors of the Debtors. The Debtors owe Parks approximately $156,000 in pre- and post-Petition license fees and, under the License Agreement, 3.5% of Tavern's Gross Receipts for the most profitable months of October, 2009 – December, 2009, have to be paid to Parks. Absent such payment, Parks' already substantive administrative claims (at least $115,000 is owed Parks in post-Petition license fees) will increase greatly. Moreover, any "holdover" period past the expiration date of the License Agreement, would be costly to the estates. Parks estimates – based on its current license with Debtors – that it may lose hundreds of thousands of dollars in license fees if the Restaurant is shut down for a few months during 2010. In addition, current Restaurant employees, the unions representing them, and the City as a whole would benefit from uninterrupted service at the Restaurant. Last but not least, the Court should consider the significant harm to Poll, from not being able to commence operations at the beginning of 2010 and recoup on its investment.

## B. Plaintiffs Cannot Establish A Likelihood Of Success on the Merits

21. Since Plaintiffs are clearly unable to show irreparable harm, "they are not entitled to equitable relief no matter how likely their chances of success on the merits and regardless of whether the balance of hardships tips in their favor." See United States v. New York City Board of Education, 2002 U.S. Dist. Lexis 23956 (E.D.N.Y. July 24, 2002), at pp. 33-34 of the Lexis opinion; Lionel, supra.

22. The Debtors' attempt to show a likelihood of success on the merits "by reason of the fact that the City will be adequately protected" for the Debtors' use of premises past the Expiration Date is not convincing. As reflected in the Debtors' motions for entry of cash collateral orders and debtor in possession financing ("DIP"), the Debtors required an emergency infusion of $70,000 to be able to pay for insurance premiums and other immediate needs. Parks and other City agencies alone (such as DOF and the Water Board) are owed over $120,000 in administrative expenses so far. In addition, as shown above, going forward, Debtors would have to pay Parks 3.5% of all Gross Receipts of the Restaurant, not just 3.5% of the Gross Receipts in excess of a specified threshold, as was the case for the months prior to October, 2009. Even if the Debtors successfully sell their Queens warehouse in the next month or two, Parks has no assurances that the Debtors would be able to generate sufficient cash to pay Parks (and maybe other parties harmed by the proposed extension) hundreds of thousands of dollars in additional administrative expenses which may result from an extension of the Expiration Period.

23. Nor should the Debtors take for granted their alleged ability to continue business in the future under the name "Tavern on the Green". See TRO at p. 11, ¶ 31, where the Debtors assert that they "will submit a plan of reorganization that calls for the transition of the

business and the name Tavern on the Green in a manner that best provides for the Debtors' creditors and their estates." As also noted in the Limited Objection and Reservation of Rights of the City of New York to Debtors' Proposed Debtor in Possession Financing Agreement with Secured Creditor TD Bank filed simultaneously herewith, the City intends to commence an adversary proceeding challenging the Debtors' claim of ownership to the trademark "Tavern on the Green". Thus, whether the Debtors will be able to propose a plan and continue in business by using the trademark will be subject to this Court's future decision on this issue.

24. Moreover, as shown above, the Debtors have no legal right to a holdover past the expiration date of the License Agreement. Since the relief sought by Debtors does not accord with applicable law, the Debtors' Complaint in the adversary proceeding commenced today will be subject to possible dismissal for failure to state a claim under which relief can be granted.

### C. THE BALANCE OF EQUITIES TIPS AGAINST DEBTORS

25. The TRO focuses only on the alleged but unproven "substantial loss in revenue" that may result to Debtors if (i) the Restaurant does not continue in business until the Expiration Date; and (ii) the Debtors' estates are unable to maximize the Debtors' assets from a successful auction of the Personal Property at the premises. For the reasons discussed in detail above, this scenario is not likely to occur if the Debtors take the necessary steps to plan the auction while continuing the operations of the Restaurant through the Expiration Date.

26. Moreover, a balance of equities requires consideration not only of Debtors' presumed but unsubstantiated losses if the Expiration Date is not extended but also of the additional, large administrative expense claims the Debtors would be incurring if the

Expiration Date is extended, the consequences to other, subordinated creditors, if the Debtors incur hundreds of thousands of dollars in additional administrative expenses, the harm to existing and future Restaurant employees and their unions if the Restaurant operations are shut for more than just a few weeks, the significant delay and inability to recoup on the investment made by the new licensee, the harm to the visiting public and the City of New York as a whole from having the Restaurant closed for 90 days.

27. It is respectfully submitted that after all of these factors are weighed and keeping in mind the speculative nature of the Debtors' alleged harm to their estates, the balance of equities definitely tips in favor of Parks and against the Debtors.

### BANKRUPTCY COURTS' EQUITABLE POWERS UNDER 11 U.S.C. § 105(a) MUST BE USED TO CARRY OUT OTHER SPECIFIC PROVISIONS OF THE BANKRUPTCY CODE

28. While this Court undoubtedly has broad equitable powers under 11 U.S.C. § 105(b) to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]", the exercise of its equitable powers "must be strictly confined within the prescribed limits" of the Bankruptcy Code. See Guerin v. Weil, Gotshal & Manges, 205 F.2d 302, 304 (2d Cir. 1953) (reversing the district court's order granting compensation not expressly provided by the Bankruptcy Act). Thus, under Section 105(a), a bankruptcy court may exercise its equitable power only as a means to fulfill some specific Bankruptcy Code provision. Id.; In re Morristown & Erie R. Co., 885 F.2d 98, 100 (3d Cir. 1989); In re Lapiana, 909 F.2d 221, 224 (7th Cir. 1990).

29. The Debtors have not been able to cite any caselaw applying the Court's equitable powers under Section 105 to extend the expiration date of a license agreement. Their

attempt to portray Parks' unquestionable right to enter into a new license agreement with a new concessionaire <u>after the Expiration Date</u> of its License Agreement with the Debtors as a purported violation of the automatic stay fails as a matter of law. Nor can the Debtors point to any other specific Bankruptcy Code provision permitting them to extend the Expiration Date of the License Agreement. 11 U.S.C. § 365, which deals with executory contracts and leases makes no reference to licenses, and courts have noted that "[l]icensing agreements are not executory contracts per se". See <u>In re Qintex Entertainment, Inc.</u>, 950 F.2d 1492 (9th Cir. 1991) (citing <u>In re Learning Publications, Inc.</u>, 94 B.R. 763, 765 (Bankr. M.D. Fla. 1988), and <u>In re Stein and Day, Inc.</u>, 81 B.R. 263, 267 (Bankr. S.D.N.Y. 1988). Moreover, the Debtors' request for an extension past the license expiration date is not within the ambit of the time extensions covered by 11 U.S.C. § 108.

## CONCLUSION

For all the reasons set forth above, Parks and the City of New York urge this Court to deny the Debtors' Motion for a TRO and Injunctive Relief.

Dated: New York, New York
October 14, 2009

    Respectfully submitted,

    MICHAEL A. CARDOZO
    Corporation Counsel of the
      City of New York
    Attorney for the New York City
    Department of Parks and Recreation
    and the City of New York and Its Agencies
    100 Church Street, Room 5-223
    New York, New York 10007
    (212) 788-0688
    By:   /s/Gabriela P. Cacuci
          Gabriela P. Cacuci (GC-4791)

## CERTIFICATE OF SERVICE

I, Gabriela P. Cacuci, an attorney admitted to practice before the courts of the State of New York do hereby certify that on October 14, 2009, I served true copies of the Defendant's Opposition to Debtors' Motion for Temporary Restraining Order and Preliminary Injunction dated October 14, 2009, by facsimile and/or electronic transmission on the parties listed below:

Keith Costa, Esq.
Akerman Senterfitt LLP
335 Madison Avenue
Suite 2600
New York, New York 10017
Fax: (212) 880-8965
Keith.Costa@akerman.com

Brian Matsumoto, Esq.
Office of the United States Trustee
Southern District of New York
33 Whitehall Street, 21st Floor
New York, New York 10004
Fax: (212) 668-2255

Rick A. Robinson, Esq.
Edward J. Estrada, Esq.
Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
Fax: (212) 521-5450

Norman N. Kinel, Esq.
Xin Liang Zhu, Esq.
Duval & Stachenfeld, LLP
101 Park Avenue, 11th Floor
New York, New York 10178
Fax: (212) 883-8883
Email: nkinel@dsllp.com

Barry N. Saltzman, Esq.
Pitta & Giblin LLP
120 Broadway, 28th Floor
New York, New York 10271

Fax: (212) 652-3891
bsaltzman@pittagiblin.com


Dated: New York, New York
       October 14, 2009

/s/ Gabriela P. Cacuci
Gabriela P. Cacuci